IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RICHARD AMEY, | CASE NO. 1:20-cv-1609 |
| Petitioner, | |
| | DISTRICT JUDGE |
| | DAVID A. RUIZ |
| vs. | |
| | MAGISTRATE JUDGE |
| WARDEN MICHAEL PHILLIPS, | JAMES E. GRIMES JR. |
| Respondent. | |
| | **REPORT &** |
| | **RECOMMENDATION** |

Petitioner Richard Amey filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Amey is in custody at the Northeast Ohio Correctional Center due to a journal entry of sentence in the case *State v. Amey*, Cuyahoga County Court of Common Pleas, Case No. CR-16-604041-A. This matter has been referred to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be denied.

### Summary of facts

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Eighth Appellate District summarized the facts underlying Amey's conviction as follows:

{¶2} Before the shooting that formed the basis of the conviction, Amey was attacked by the victim, La'Dale Davis. The fight began when Amey accompanied Janice Gresham, Davis's former girlfriend, through her apartment complex. Davis believed that Amey was in a romantic relationship with Gresham. Davis tackled and began repeatedly punching Amey. With some difficulty, security broke up the one-sided fight. Amey and Gresham separately left the scene, but it is undisputed that Amey's injuries were not severe enough to warrant any medical intervention.

{¶3} Sometime later that same evening, Amey again met up with Gresham. Amey, however, had taken the opportunity to arm himself with an illegally possessed and carried firearm. Amey claimed he intended to escort Gersham to her apartment to get some personal belongings so she could stay at a hotel.

{¶4} In the second altercation, Davis assaulted Gersham outside of her apartment as she attempted to descend the steps to leave. It is undisputed that Amey did not attempt to intervene in the second attack on Gersham, who managed to get inside the apartment and shut the door. Immediately after the door was closed, Gersham heard two shots being fired. Amey told police officers that in the fleeting moment between Gersham's successful escape and the shots being fired, Davis was downstairs blocking Amey's exit and was coming up toward Amey when the shooting started. Gersham testified, however, that Amey was downstairs and Davis was the one upstairs, giving Amey a path to retreat from Davis once Gersham was in the safety of her apartment. The coroner corroborated Gersham's account with the angle of the bullet trajectory.

{¶5} When Gersham exited the apartment two or three minutes later, she observed Davis lying at the bottom of the stairs. Amey had fled the scene and discarded the firearm in the sewer. Amey told police officers that during the second fight, Davis said he would kill Amey. There is no evidence establishing whether that statement, if true, was hyperbole or a prediction, but it is undisputed that Davis was unarmed and that Amey's injuries from either altercation were not severe enough to warrant any medical attention. Police officers documented bite marks Amey claims to have been caused by Davis.

*State v. Amey*, 120 N.E.3d 503, 506–07 (Ohio Ct. App. 2018).

**Procedural background**

*1.    Trial court proceedings*

In March 2016, a Cuyahoga County Grand Jury indicted Amey on 2 counts of murder with firearm specifications, 2 counts of felonious assault with firearm specifications, 1 count of voluntary manslaughter with firearm specifications, 1 count of tampering with evidence with firearm specifications, and 2 counts of having weapons under disability. Doc. 4-1, at 3–7 (Exhibit 1). Amey retained counsel and pleaded not guilty. *Id.* at 8 (Exhibit 2).

Amey waived his right to a jury. Doc. 4-1, at 9–10 (Exhibits 3, 4). In March 2017, the case proceeded to a bench trial. After the court heard the evidence, it granted Amey's motion to dismiss the 3-year firearm specification attached to the tampering with evidence count. *Id.* at 11 (Exhibit 5). The court found Amey not guilty of murder, felonious assault, and tampering with evidence. *Id.* at 12 (Exhibit 6). The court found Amey guilty of voluntary manslaughter with the firearm specification and both counts of having weapons under a disability. *Id.* In May 2017, the court merged the two weapons under disability counts and sentenced Amey to 7 years for involuntary manslaughter and 3 years for the firearm specification, to run consecutively, and 3 years for having a weapon under a disability, to run concurrently, for a total of 10 years in prison. *Id.* at 14 (Exhibit 7).

3

2.    *Direct appeal*

In May 2017, Amey, through new counsel, appealed to the Ohio court of appeals. Doc. 4-1, at 16 (Exhibit 8). In his brief, Amey raised the following assignments of error:

> 1. The state failed to produce sufficient evidence as to each and every necessary element to prove the offense of voluntary manslaughter.
>
> 2. The defendant's conviction for voluntary manslaughter was against the manifest weight of the evidence.

*Id*. at 27 (Exhibit 9). In a 2–1 decision, the Ohio court of appeals reversed Amey's convictions. *Id*. at 86–107 (Exhibit 11). The court found that there was insufficient evidence to convict Amey of voluntary manslaughter, relying, in part, on the trial court's inconsistent verdicts. *Id*. at 91-95. The court also found that the evidence supported Amey's claim of self-defense and that the trier-of-fact lost its way and caused a manifest miscarriage of justice. *Id*. at 91-99.

The state filed an application under Ohio Rule of Appellate Procedure 26(A) for reconsideration and en banc review, alleging that the court created an intra-district conflict when it found that the trial court's inconsistent verdict was erroneous. Doc. 4-1, at 108–117 (Exhibit 12). Amey opposed the state's application. *Id*. at 121–27 (Exhibit 13).

In October 2018, the Ohio court of appeals granted the state's motion for reconsideration and vacated its prior journal entry and opinion. Doc. 4-1, at 130 (Exhibit 14). In a 2–1 decision, the court overruled Amey's assignments of error and affirmed the trial court's judgment. *Id*. (Exhibit 15).

4

In December 2018, Amey appealed to the Ohio Supreme Court. Doc. 4-1, at 153 (Exhibit 17). In his memorandum in support of jurisdiction, Amey raised the following propositions of law:

> 1. A defendant who asserts a defense of self-defense against the charge of voluntary manslaughter does not, in so doing, concede that the defendant has knowingly caused the death of the alleged victim.

> 2. When a trial court's explanation of its verdict in a bench trial explicitly finds that the evidence of an element was lacking in one count and then finds that the evidence was sufficient with respect to that same element in another count, the conviction offends due process of law under the Fifth and Fourteenth cannot stand.[1]

> 3. Evidence of a close-range gunshot wound, without more, is insufficient to establish a knowing killing under R.C. 2903.03, voluntary manslaughter.

Doc. 4-1, at 156 (Exhibit 18). In February 2019, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Amey's appeal. *Id*. at 173 (Exhibit 20).

> 3.    *Federal habeas corpus petition*

In July 2020, Amey, through counsel, filed a federal habeas corpus petition under 28 U.S.C. § 2254. Doc. 1. He raised the following grounds for relief:

> **Ground 1**: Because the fact finder concluded that the defendant did not knowingly kill the alleged victim, the evidence does not sufficiently demonstrate the defendant committed voluntary manslaughter.

> **Ground 2**: Petitioner was denied due process when the state court of appeals held that asserting self defense constitutes a concession that he knowingly killed the alleged victim.

---

[1]    Throughout this report and recommendation, Amey's claims are reproduced as written and have not been edited.

Doc. 1, at 6, 8. Respondent Michael Phillips filed a Return of Writ, Doc. 4, and Amey filed a Traverse, Doc. 9.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

*1.     Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982)

6

(per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present the claims to the state courts as federal constitutional issues and not just as issues arising under state law. *See, e.g., Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).

    2.   *Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the

procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental

miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

### 3. *Merits Review*

To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the *contrary to* clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the *unreasonable application* clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent

or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted *contrary to*, or *unreasonably applied*, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an *unreasonable application* of law, the court uses an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*1.    Ground 1 fails on the merits*

In Ground 1, Amey argues that the "knowing" element of his voluntary manslaughter conviction is not supported by sufficient evidence. Doc. 1, at 6; Doc. 1-2, at 4; Doc. 9, at 6.

When reviewing a claim that a petitioner's conviction is not supported by sufficient evidence, the court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The court defers to the trier-of-fact's determination. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The standard is not whether the trier-of-fact made the correct guilt or innocence determination, but whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). The court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [fact-finder]." *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted);

*see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *see Coleman v. Johnson*, 566 U.S. 650, 651 (2012). So even if this Court were to conclude that a rational trier-of-fact could not have found Amey guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

Ohio Revised Code § 2903.03(A) is Ohio's voluntary manslaughter statute. It states, "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another[.]" Ohio Rev. Code § 2903.03(A). The "sudden passion" or "fit of rage" component "is a 'mitigating circumstance' that if proven by the defendant, lessens the severity of the criminal conduct." *Amey*, 120 N.E.3d at 507 (citing *State v. Henry*, No. 102634, 2016 WL 762573, at *6 (Ohio Ct. App. Feb. 25, 2016)).

In his Petition, Amey does not challenge the sufficiency of the evidence of the *mitigating* element in Ohio Revised Code 2903.03(A). He only challenges the sufficiency of the evidence of the *knowingly* element. Doc. 1, at 6; Doc. 1-2,

at 4; Doc. 9, at 2, 6.[2] Also, Amey didn't raise a claim challenging the mitigation element in his brief on appeal to the Ohio Supreme Court, Doc. 4-1, at 155–163, so any purported claim about the mitigation element would be procedurally defaulted, *Williams*, 460 F.3d at 806 (a petitioner must pursue a claim through the state's ordinary appellate review procedures); *McMeans*, 228 F.3d at 681 (a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts).

Amey argues that there was insufficient evidence to satisfy the *knowingly* element of the involuntary manslaughter count because the trial court found that the *knowingly* element wasn't satisfied on the felonious assault and felony murder counts. Doc. 1-2, at 4–5; Doc. 9, at 7. But the Ohio court of appeals explained, "inconsistent verdicts as between independent counts do not create reversible error." *Amey*, 120 N.E.3d at 510. That finding was not *contrary to* or an *unreasonable application* of Supreme Court precedent. *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("We also reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them."); *see also Dunn v. United States*, 284 U.S. 390, 393 (1932) ("Consistency in the

---

[2]    Amey was represented by counsel during the state court proceedings and is represented by counsel in this federal habeas case. So the Court's duty to liberally construe pro se filings, *see Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), doesn't apply here.

verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment."); *Mapes v. Coyle*, 171 F.3d 408, 420 (6th Cir. 1999) ("*Powell* teaches that the inconsistent verdicts are viewed completely separately, and that no conclusion may be drawn from comparing the two."). The fact that Amey's case was a bench trial does not compel a different result. *Harris v. Rivera*, 454 U.S. 339, 345–48 (1981) (applying the *inconsistent verdict* rule in *Dunn* to a state bench trial).

In his Traverse, Amey protests that he is not making an *inconsistent verdicts* argument. Doc. 9, at 8. Amey's assertion is belied by the arguments in his Petition and brief in support, which rely exclusively on an *inconsistent verdicts* argument to support his sufficiency of the evidence claim.[4] As explained above, those arguments fail. *See Powell*, 469 U.S. at 67; *see also Jones v. Lazaroff*, No. 1:14-cv-2549, 2016 WL 93520, at *2 (N.D. Ohio Jan. 8, 2016) (rejecting the petitioner's argument that his sufficiency of the evidence claim was anything but a repackaged *inconsistent verdicts* argument). And Amey's new argument that he presents in his Traverse—that the vacated Ohio court of appeals' opinion supports his sufficiency of the evidence claim—was not presented in his Petition and is not properly before this Court. *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (petitioner's insufficiency-of-the-evidence argument raised for the first time in his traverse was not properly

---

[4]     The Ohio court of appeals reconciled the trial court's verdicts, *Amey*, 120 N.E.3d at 509, a finding that Amey does not challenge.

14

before the district court, so the district court did not err when it didn't consider it).

Even if this Court were to consider Amey's argument raised for the first time in his Traverse, Amey's argument fails. Amey relies on the initial Ohio court of appeals' decision reversing his conviction, Doc. 9, at 8–9, but that decision was vacated by the Ohio court of appeals upon reconsideration, *Amey*, 120 N.E.3d at 506 n.1; *State v. Amey*, No. 105847, 2018 WL 2411567 (May 24, 2018) (opinion vacated and superseded on reconsideration). The vacated decision has no precedential value. *See, e.g., State ex rel. Ney v. DeCourcy*, 612 N.E.2d 386, 389 (Ohio Ct. App. 1992) ("Once vacated…a decision has no precedential value and must be treated as a nullity."); *see also Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (a federal court reviews the last reasoned state court decision addressing the merits of a claim). So Amey's reliance upon the vacated opinion is misplaced.

Finally, Amey's reliance upon the vacated Ohio court of appeals' decision fails for another reason—it does not show that there was insufficient evidence of the *knowingly* element, as Amey claims. Doc. 9, at 8. The trial court found that there was sufficient evidence for the *knowingly* element of voluntary manslaughter because Amey used a firearm—a deadly weapon—and shot Davis at close range.[5] Doc. 5-3, at 45–46. The court in its vacated opinion

---

[5]     Under Ohio Revised Code § 2901.22(B), "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."

disagreed, writing that "The fact that the victim was shot at close range does not satisfy the element of knowingly as the trial court had reasoned." Doc. 4-1, at 94. Amey hangs his hat on that statement, but the subsequent decision of the Ohio court of appeals affirmed Amey's convictions and stated that the trial court "expressly conclude[ed] that Amey knowingly shot the victim for the purposes of the voluntary manslaughter conviction[.]" *Amey*, 120 N.E.3d at 509. So, at best, Amey has only shown that there is "fair-minded disagreement" on the question of whether shooting a victim at close range is sufficient evidence for the *knowingly* element. *Harrington*, 562 U.S. at 103. That is not enough to obtain habeas relief. *Id.*; *see also Linzy v. LaRose*, No. 1:14-cv-1558, 2016 WL 11371447, at *11 (N.D. Ohio Apr. 26, 2016)[6] ("[The petitioner] admitted to intentionally shooting Hall—the probable consequence of which is death. There is no question in this Court's opinion that firing a weapon three times at close range into an individual satisfies the intent element of felonious assault, murder, and felony murder[,]" including that the petitioner acted *knowingly* as defined in Ohio Revised Code 2901.22(B)). It cannot be said that, after viewing the evidence in the light most favorable to the prosecution, no rational trier-of-fact could have found the *knowingly* element of voluntary manslaughter proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

Ground 1 fails on the merits.

---

[6] Report and recommendation adopted, 2016 WL 3207643 (N.D. Ohio June 10, 2016).

16

##### 2. *Ground 2 fails on the merits*

In Ground 2, Amey argues that he was "denied due process" when the Ohio court of appeals found that Amey conceded that he *knowingly* killed Davis when Amey argued that he acted in self-defense. Doc. 1, at 8; Doc. 1-2, at 6. The Warden argues that Ground 2 is procedurally defaulted because Amey failed to raise it on direct appeal. Doc. 4, at 24. But Amey couldn't have raised it on direct appeal to the Ohio court of appeals, because it is the Ohio court of appeals' ruling that he challenges. Amey raised Ground 2 at his first opportunity—on appeal to the Ohio Supreme Court. Doc. 4-1, at 156, 161–62. So Amey did not procedurally default Ground 2.

But Ground 2 fails on the merits. The Ohio court of appeals wrote, in relevant part,

> …with respect to the sufficiency of the evidence, Amey claims to have acted in self-defense. He therefore concedes that he knowingly killed Davis; it is Amey's belief that killing Davis was legally justified. Thus, there is sufficient evidence supporting the elements of the voluntary manslaughter charge for which the state bore the burden at trial.

*Amey*, 120 N.E.3d at 508 (citations omitted). Amey asserts, "One does not forfeit one's right to have the prosecution prove every element of the offense charged in order to assert the defense of self-defense." Doc. 1-2, at 6. He submits that the Ohio court of appeals "stripped Mr. Amey of the presumption of innocence and due process as guaranteed by the Fifth and Fourteenth Amendments." Doc. 9, at 9.

During the relevant period in this case,[7] a self-defense affirmative defense in Ohio was:

> described as being "in the nature of a confession and avoidance, by which a defendant essentially admits the existence of facts which tend to establish the elements of the crime." [*State v.*] *Davis*, 8 Ohio App.3d at 209, 456 N.E.2d 1256. When a defendant asserts the defense of self-defense in a murder trial, the defendant does not dispute or negate the elements of "purposely" or "cause the death of another." Rather, the defendant solely seeks to establish the elements of self-defense, which are unrelated to the elements of murder. *See Isaac v. Engle*, 646 F.2d 1129, 1139 (6th Cir. 1980) (*en banc*) (Lively, J., dissenting), *rev'd*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (The defense of self-defense "admits the facts claimed by the prosecution to establish an offense but relies on the existence of a separate set of facts or circumstances which the law recognizes as an excuse. When established, this excuse exempts the defendant from liability.").

*White v. Arn*, 788 F.2d 338, 344–45 (6th Cir. 1986); *State v. Poole*, 294 N.E.2d 888, 889 (Ohio 1973) (affirmative defenses, including self-defense, "represent a substantive or independent matter which the defendant claims exempts him from liability even if it is conceded that the facts claimed by the prosecution are true" (internal citation marks omitted)); *see also Rhodes v. Brigano*, 91 F.3d 803, 809 (6th Cir. 1996) ("in many cases, a defendant asserting an affirmative defense in essence 'admits' the elements of the crime and thereafter seeks to prove an additional set of facts which absolves guilt….many courts have articulated the theory of affirmative defenses as defenses in which the accused admits to the elements of the crime and seeks to avoid guilt through proof of

---

[7]     As of March 2019, Ohio shifted the burden of proof of self-defense to the prosecution. *State v. Brooks*, Nos. Nos. 2020-1189 and 2020-1250, 2022 WL 2836772 (Ohio July 21, 2022). It is not clear if, whether, or to what extent the following discussion of Ohio law will be affected by that shift.

18

other relevant facts") (citing *White*, 788 F.2d at 344–45)); *State v. Brown*, No. 2018 CA 107, 2019 WL 2354950, at *9 (Ohio Ct. App. June 3, 2019) ("Self-defense is a 'confession and avoidance' affirmative defense in which appellant admits the elements of the crime but seeks to prove some additional element that absolves him of guilt") (citing *State v. White*, No. 97 CA 2282, 1998 WL 10226 (Ohio Ct. App. Jan. 14, 1998)).

Amey does not identify legal authority showing that the Ohio court of appeals' description of Ohio's affirmative defense law is unconstitutional. He cites *Coffin v. United States*, 156 U.S. 432, 453 (1895), *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978), *Estelle v. Williams*, 425 U.S. 501, 503 (1976), and *In re Winship*, 397 U.S. 358, 364 (1970), Doc. 9, at 7, 9–10, but those cases establish that a defendant enjoys a presumption of innocence and that there must be sufficient proof of every element of a charged offense. None of those cases hold that a "confession and avoidance" affirmative defense law like Ohio's is unconstitutional.

In *Martin v. Ohio*, the United States Supreme Court held that an Ohio law requiring a defendant to prove self-defense, rather than requiring the state to dis-prove it, did not violate the Due Process Clause. 480 U.S. 228, 233 (1987). That is so even when the defendant's evidence offered to show self-defense might negate an element of the crime charged. *Id*. The Court commented, "We note here, but need not rely on, the observation of the Supreme Court of Ohio that '[a]ppellant did not dispute the existence of [the elements of aggravated

19

murder], but rather sought to justify her actions on grounds she acted in self-defense.'" *Id.* at 234 (quoting *State v. Martin*, 488 N.E.2d 166, 168 (Ohio 1986)). While the Supreme Court did not endorse the Ohio Supreme Court's comment, it also did not criticize it. In other words, the Ohio court of appeals' statement—that Amey conceded he knowingly killed Davis by asserting a self-defense argument—is consistent with Ohio law. And that law has not been found to be unconstitutional by the United States Supreme Court. So Amey does not show that the Ohio court of appeals' decision was *contrary to* or that it *unreasonably applied* Supreme Court precedent or clearly established federal law. *Carey*, 549 U.S. at 77.

In any event, the Ohio court of appeals, when reconciling the trial court's verdicts, also wrote, "[n]evertheless, even if the [verdict] statements created ambiguity, the trial court removed all doubt by expressly concluding that Amey knowingly shot the victim for the purposes of the voluntary manslaughter conviction, a fact of consequence *also* demonstrated through Amey's claim of self-defense." *Amey*, 120 N.E.3d at 509 (emphasis added). So the court did not rely exclusively on Amey's self-defense claim to support the *knowingly* element. As explained above, the fact that Amey shot Davis at close range was sufficient evidence that Amey *knowingly* killed Davis. The Ohio court of appeals' sufficiency-of-the-evidence determination was not unreasonable, so this Court "must still defer to [it]." *Brown*, 567 F.3d at 205.

Ground 2 fails on the merits.

20

**Conclusion**

For the reasons set forth above, I recommend that Amey's Petition be denied.

Dated: November 16, 2022

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).